United States District Court
Southern District of Texas
**ENTERED**
September 17, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE MALDONADO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:25-CV-345 |
| | § | |
| MARCY BRYAN CROFT, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

This barratry case was removed from Texas state court. Pending before the Court is a motion to remand filed by Plaintiff Jose Maldonado ("Maldonado"). The motion to remand (Dkt. 17) is **GRANTED**. This case is **REMANDED** to the 190th Judicial District Court of Harris County, Texas, where it was assigned case number 2025-00577.

### FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit has its roots in a bitter dispute between The Buzbee Law Firm ("Buzbee"), which represents Maldonado, and attorneys for and associates of the rapper Shawn Carter ("Carter"), also known as Jay-Z.[1] Carter is not a party to this litigation, but

---

[1] The facts outlined below are primarily drawn from Maldonado's state-court pleading and are taken as true at this stage solely because Maldonado has pled them. However, the Court notes that two closely related cases—one in which another of Buzbee's clients is the plaintiff and one in which Buzbee himself is the plaintiff—were also removed from Texas state court and are also pending before this Court. *See* Southern District of Texas case numbers 4:25-CV-353 and 4:25-CV-385. Furthermore, other closely related cases, which the Court discusses below, have been filed in other courts. When necessary, the Court has taken judicial notice of documents and events in those related cases for the purpose of providing a thorough recitation of the facts giving rise to this lawsuit. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related

he is "founder and Chairman" of Defendant Roc Nation, LLC ("Roc Nation"). (Dkt. 1-2 at pp. 3, 9).

Aside from being Maldonado's counsel in this case, Buzbee also represented Maldonado in a personal injury lawsuit that settled in May of 2023. (Dkt. 1-2 at p. 11). Maldonado was happy with Buzbee's representation and with the amount of his settlement in the personal injury lawsuit, but a little over a year after the settlement two people who "identified themselves as federal agents" repeatedly contacted Maldonado in an unsuccessful attempt to convince Maldonado to file a lawsuit against Buzbee. (Dkt. 1-2 at pp. 10–12). One of the false federal agents "identified herself as Jessica Santiago" ("Santiago"), while the other "identified himself as Gregory Thomas" ("Thomas"); and they "told [Maldonado] he had to talk to them[.]" (Dkt. 1-2 at pp. 4, 11).

Santiago and Thomas told Maldonado that, though they were government agents, they "could connect him with a private lawyer so he could sue [Buzbee]" and "get . . . a lot of money." (Dkt. 1-2 at pp. 4, 11). Ultimately, Santiago and Thomas "admitted that they were working for" Defendant Marcy Croft ("Croft"), a lawyer based in Mississippi, and her law firm, Defendant MJ Legal, P.A. ("MJ Legal"); and they "offered money to [Maldonado] to hire Defendant Croft to sue [Buzbee]." (Dkt. 1-2 at pp. 4, 11–12).

---

filings."); *see also Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983) ("[F]ederal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue."). Docket citations that are in parentheses are citations to the docket of this case. A docket citation that is immediately preceded by a case number is a citation to the docket of the specified case.

Maldonado alleges that Croft's failed attempts to solicit him to sue Buzbee were an attempt by Defendants to gain leverage over Buzbee in litigation involving Carter. (Dkt. 1-2 at p. 10). The fight between Carter and Buzbee began with Buzbee's representation of "dozens" of clients in sexual-misconduct lawsuits against rapper Sean Combs ("Combs"), who was indicted in 2024 for sex trafficking, racketeering, and transportation to engage in prostitution. *See* Southern District of Texas case number 4:25-CV-385 at docket entry 1-2, pages 80–93, 321–22. Two of the clients whom Buzbee represents in lawsuits against Combs have, according to Buzbee, also named Carter as a participant in Combs's "depraved and illegal activities." *See* Southern District of Texas case number 4:25-CV-385 at docket entry 1-2, pages 321–22. When his clients allegedly named Carter, Buzbee sent letters to Carter's attorneys on his clients' behalf requesting "a confidential sit down to discuss the clients' allegations" against Carter. (Dkt. 1-2 at p. 10).

The allegations contained in Buzbee's letters set off aggressive, multifront litigation between Carter and Buzbee. "In response to the two letters," Defendant Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") filed a lawsuit against Buzbee on Carter's behalf in California state court, alleging that Buzbee was attempting to extort money from Carter and defame him. (Dkt. 1-2 at pp. 3, 10). *See* case number 24SMCV05637 in the Superior Court of the State of California for the County of Los Angeles—West District. Buzbee reacted by adding Carter to a sexual-misconduct lawsuit that Buzbee had previously filed against Combs in the Southern District of New York; in his amended pleading in the New York case, Buzbee alleged that Combs and Carter had sexually assaulted a 13-year-old girl ("Jane Doe") on the night of the 2000 MTV Video Music

Awards. (Dkt. 1-2 at pp. 3, 10). *See* Southern District of New York case number 1:24-CV-7975 at docket entry 29.

The California and New York lawsuits were dismissed—the former on Buzbee's motion to dismiss under California's anti-SLAPP statute, the latter voluntarily under Federal Rule of Civil Procedure 41— well before any trial on the merits. Nevertheless, by the time they were closed, both lawsuits had evidently already spilled from the courtroom into the media and had generated what the California trial judge called "a fairly high amount of rhetoric" and "salacious" allegations "on both sides" that led him to "wonder[] whether the court [wa]s the real audience for some of the language used." *See* case number 24SMCV05637 in the Superior Court of the State of California for the County of Los Angeles—West District, order entered June 30, 2025 at page 2. In the California lawsuit, for instance, Carter presented declarations from two private investigators who had allegedly tracked down Jane Doe in Alabama; the declarations purportedly showed that Jane Doe had both recanted her allegations against Carter and admitted that Buzbee fed her those allegations.[2] *See* case number 24SMCV05637 in the Superior Court of the State of California for the County of Los Angeles—West District, order entered June 30, 2025 at pages 4–6. Buzbee responded to Carter's evidence with declarations of his own from Jane Doe in which Jane Doe supposedly both reasserted her allegations against Carter and stated that she had felt intimidated and afraid when confronted by the private investigators

---

[2] Carter eventually sued Jane Doe and Buzbee in Alabama for malicious prosecution, abuse of process, civil conspiracy, and defamation. *See* Southern District of Alabama case number 1:25-CV-86 at docket entry 1. Quinn Emanuel does not represent Carter in the Alabama case.

because she had believed that her identity was confidential.[3] *See* case number 24SMCV05637 in the Superior Court of the State of California for the County of Los Angeles—West District, order entered June 30, 2025 at pages 4–6.

The New York case featured similar bare-knuckled litigation tactics. In that case, Carter sought dismissal of the claims against him with prejudice and monetary sanctions against Buzbee under Federal Rule of Civil Procedure 11, arguing that Buzbee's complaint on behalf of Jane Doe against Carter "contain[ed] provably false statements" and that Buzbee had engaged in "deeply wrong and unethical" conduct by accusing Carter of a "horrific crime without adequately vetting the allegation[.]" *See* Southern District of New York case number 1:24-CV-7975 at docket entry 61. However, Carter's Rule 11 motion relied not on information acquired through formal discovery (Carter had only been a party to the case for a month when he filed his motion) but on an NBC News article purporting to highlight "numerous holes in [Jane Doe's] story"—though, in fairness to Carter, the NBC News article quoted both Jane Doe and Buzbee. *See* Southern District of New York case number 1:24-CV-7975 at docket entries 61 and 62. Buzbee responded to Carter's Rule 11 motion with his own request for expenses and attorney's fees on the basis that the Rule

---

[3] According to the California trial judge's opinion dismissing Carter's extortion lawsuit against Buzbee, the private investigators who documented Jane Doe's alleged recantation averred in their declarations that they were not hired by either Carter or Quinn Emanuel. *See* case number 24SMCV05637 in the Superior Court of the State of California for the County of Los Angeles— West District, order entered June 30, 2025 at page 4. The California trial judge, on the record before him, could not say who their employer was. *See* case number 24SMCV05637 in the Superior Court of the State of California for the County of Los Angeles—West District, order entered June 30, 2025 at pages 32–33.

11 motion was "factually and legally meritless and was filed for an improper purpose." *See*

Southern District of New York case number 1:24-CV-7975 at docket entry 75.

Alex Spiro ("Spiro") of Quinn Emanuel was Carter's defense counsel in the New

York case, and his repeated attacks on Buzbee's character drew sharp criticism from the

district judge a mere 17 days after Spiro first appeared in the case:

> Since Carter's attorney first appeared in this case seventeen days ago, he has
> submitted a litany of letters and motions attempting to impugn the character
> of [Buzbee], many of them expounding on the purported "urgency" of this
> case.
>
> Carter's lawyer's relentless filing of combative motions containing
> inflammatory language and ad hominem attacks is inappropriate, a waste of
> judicial resources, and a tactic unlikely to benefit his client. The Court will
> not fast-track the judicial process merely because counsel demands it.
> *See* Southern District of New York case number 1:24-CV-7975 at docket
> entry 53, page 4 (record citations omitted).

Maldonado alleges that Croft; Spiro; and Carter's company, Roc Nation, have

worked together for years, primarily on civil rights cases involving "criminal justice reform

and prison reform[.]" (Dkt. 1-2 at pp. 6–8, 11–12). In one social media post from 2020 that

is included in Maldonado's pleading, for example, Croft stated that she and her then-firm

had been retained by "Alex Spiro, Jay-Z, and RocNation" to handle a lawsuit regarding

conditions at a Mississippi prison:



**marcybcroft**
Parchman, Mississippi

Maron Marvel Bradley Anderson & Ta...
634 followers
7m · ⊕

Maron Marvel Bradley Anderson & Tardy LLC
has been retained by Alex Spiro, Jay-Z, and
RocNation in the lawsuit filed on behalf of
mistreated inmates over inhumane conditions at
Parchman Prison.  Maron Marvel shareholder,
Marcy Croft will serve as lead Mississippi
Counsel.

Dkt. 1-2 at p. 6.

Maldonado further alleges that Croft and Quinn Emanuel orchestrated the effort to recruit him to sue Buzbee, with financing from Roc Nation, and that he possesses audiotapes in which agents of Croft, Quinn Emanuel, and Roc Nation admit that "lawsuits [against Buzbee] would be reported in the press, and that some [of Buzbee's] former clients had already accepted money to join the effort." (Dkt. 1-2 at pp. 2–3). According to Maldonado's pleading, the efforts of Croft, Quinn Emanuel, and Roc Nation have produced two "utterly frivolous and patently false" lawsuits against Buzbee that were filed by former personal injury clients of Buzbee's. (Dkt. 1-2 at p. 3). This statement in Maldonado's pleading is apparently a reference to two lawsuits filed against Buzbee in the Eastern District of Louisiana, one of which has been dismissed on *forum non conveniens* grounds

and the other of which is currently stayed pending arbitration. *See* Eastern District of Louisiana case number 2:24-CV-2827 at docket entry 25 and Eastern District of Louisiana case number 2:24-CV-2873 at docket entry 24.

Represented by Buzbee, Maldonado filed this lawsuit in Texas state court, asserting claims of barratry and civil conspiracy against Croft, MJ Legal, Quinn Emanuel, Roc Nation, and Santiago. (Dkt. 1-2). Croft and MJ Legal removed the case to this Court under the diversity jurisdiction statute, 28 U.S.C. § 1332, asserting that the two diversity-destroying Texas defendants—Quinn Emanuel and Santiago—are, respectively, improperly joined and fictitious. (Dkt. 1).

## LEGAL STANDARD

Generally, a defendant may remove to federal court any state court civil action over which the federal court would have original jurisdiction. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction—commonly referred to as "diversity jurisdiction"—over civil actions in which: (1) all persons on one side of the controversy are citizens of different states than all persons on the other side; and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332; *see also McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). The removing party bears the burden of establishing by a preponderance of the evidence that removal is proper. *Manguno v. Prudential Prop. & Cas. Ins. Co*., 276 F.3d 720, 723 (5th Cir. 2002). "[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc*., 200 F.3d 335, 339 (5th Cir. 2000).

## ANALYSIS

The Court now turns to the question of whether Croft and MJ Legal have established that the federal courts have diversity jurisdiction over this lawsuit. The Court respectfully concludes that they have not.

### —*Improper joinder*

The Court respectfully concludes that Croft and MJ Legal have not carried their heavy burden of showing that Quinn Emanuel was improperly joined.

### i.    The applicable procedure

Diversity jurisdiction is absent if any plaintiff in the case is a citizen of the same state as any named defendant, provided all nondiverse defendants have been "properly joined." *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 572–73 (5th Cir. 2004) (quotation marks omitted). As a result, if the plaintiff has named a nondiverse defendant, a removing diverse defendant must prove that the nondiverse defendant was improperly joined in order to establish diversity jurisdiction. *Id*. at 575. "The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity[,]" so "the burden of demonstrating improper joinder is a heavy one." *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005) (quotation marks and brackets omitted).

A diverse defendant can carry its burden of proving improper joinder by demonstrating "that there is no reasonable basis for the [federal] district court to predict that the plaintiff might be able to recover against [the] in-state defendant." *Smallwood*, 385 F.3d 573. In evaluating whether the defendant has carried its burden, the district court may, and typically does, begin by "conduct[ing] a Rule 12(b)(6)-type analysis, looking

initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id*.

When conducting the Rule 12(b)(6) analysis, the district court looks at "the state court complaint as it exists at the time of removal[.]" *Cavallini v. State Farm Mutual Insurance Co.*, 44 F.3d 256, 264–65 (5th Cir. 1995); *see also Turner v. GoAuto Insurance Co.*, 33 F.4th 214, 215, 217 (5th Cir. 2022). The district court evaluates the plaintiff's allegations against the nondiverse defendant using the federal pleading standard. *International Energy Ventures Management, L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016). "To pass muster under Rule 12(b)(6), a complaint must have contained enough facts to state a claim to relief that is plausible on its face." *Id*. (brackets and quotation marks omitted). As the Fifth Circuit has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This includes the basic requirement that the facts plausibly establish each required element for each legal claim. However, a complaint is insufficient if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action.
> *Coleman v. Sweetin*, 745 F.3d 756, 763–64 (5th Cir. 2014) (quotation marks and citations omitted).

The Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court's review is limited to the complaint; any documents attached to the complaint; any documents attached to a motion to dismiss that are central to the claim and referenced by the complaint; and matters subject to judicial

notice under Federal Rule of Evidence 201. *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022); *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022).

      ii.    <u>Barratry and civil conspiracy under Texas law</u>

Maldonado has sued all of the defendants for barratry and civil conspiracy. (Dkt. 1-2 at pp. 12–13).

"Barratry" is "generally defined as the solicitation of employment to prosecute or defend a claim with intent to obtain a personal benefit[.]" *Pohl v. Cheatham*, -- S.W.3d --, 2025 WL 1349691, at *4 (Tex. May 9, 2025) (quotation marks omitted). Section 82.0651(c) of the Texas Government Code creates a cause of action for a person who was improperly solicited by an attorney but did not enter into a legal-services contract. *Id.* at *5 n.8. A person may recover under Section 82.0651(c) of the Texas Government Code if that person "was solicited by conduct violating Section 38.12(a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas[.]" Tex. Gov't Code § 82.0651(c). Section 38.12(a) of the Texas Penal Code provides that:

> A person commits an offense if, with intent to obtain an economic benefit the person:
>
> (1)  knowingly institutes a suit or claim that the person has not been authorized to pursue;
>
> (2)  solicits employment, either in person or by telephone, for himself or for another;
>
> (3)  pays, gives, or advances or offers to pay, give, or advance to a prospective client money or anything of value to obtain employment as a professional from the prospective client;
>
> (4)  pays or gives or offers to pay or give a person money or anything of value to solicit employment;

(5)  pays or gives or offers to pay or give a family member of a prospective client money or anything of value to solicit employment;  or

(6)  accepts or agrees to accept money or anything of value to solicit employment. Tex. Penal Code § 38.12(a).

A person suing under Section 82.0651(c) of the Texas Government Code can recover a $10,000 statutory penalty, actual damages caused by the prohibited conduct, and attorney's fees. Tex. Gov't Code § 82.0651(d). The civil barratry statute provides that it "shall be liberally construed and applied to promote its underlying purposes, which are to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection." Tex. Gov't Code § 82.0651(e).

Under Texas law, "a civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996). The essential elements of an actionable civil conspiracy "are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

"Historically, the Texas Supreme Court has favored an expansive view of civil conspiracy liability." *Chemtreat, Inc. v. Chemtech Chemical Services, LLC*, No. 1:07-CV-146, 2007 WL 4353420, at *6 (E.D. Tex. Dec. 7, 2007). "One can be liable for conspiracy even if he himself did not commit the underlying bad acts; civil conspiracy extends liability in tort beyond the active wrongdoer to those who have merely planned, assisted, or

encouraged his acts." *Bates Energy Oil & Gas, L.L.C. v. Complete Oil Field Services, L.L.C.*, No. 20-50952, 2021 WL 4840961, at *3 (5th Cir. Oct. 15, 2021) (quotation marks, brackets, and ellipsis omitted); *see also Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925–26 (Tex. 1979). "Once a conspiracy is proven, each co-conspirator is responsible for all acts done by any of the conspirators in furtherance of the unlawful combination." *Bates Energy*, 2021 WL 4840961 at *3 (quotation marks omitted). "Additionally, direct evidence of a conspiracy (such as smoking-gun phone calls or e-mails) are not required; proof of a conspiracy may be, and usually must be made by circumstantial evidence." *Id.* (quotation marks omitted); *see also Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968).

iii.    <u>Maldonado's claims against Quinn Emanuel</u>

At this juncture, it is not for the Court to evaluate the veracity of Maldonado's claims (or, for that matter, to make fact findings or legal judgments regarding how the parties have conducted themselves in other courts or outside of court). To the contrary, the Court must accept all well-pleaded facts in Maldonado's pleading as true, view those facts in the light most favorable to Maldonado, and then determine whether Croft and MJ Legal have met their heavy burden of showing that there is no reasonable basis for the Court to predict that Maldonado might be able to recover against Quinn Emanuel under Texas law.

The Court respectfully concludes that Croft and MJ Legal have not met their heavy burden of showing that Quinn Emanuel was improperly joined. To summarize the Court's prior discussion of the pertinent facts, Maldonado alleges in his state-court pleading that Santiago and Thomas, falsely claiming to be government agents, repeatedly contacted him,

claimed that he was required to speak with them, and then offered him money in an attempt to persuade him to hire Croft to sue Buzbee. (Dkt. 1-2 at pp. 4, 11–12). Santiago and Thomas, according to Maldonado, admitted that they were working for Croft and MJ Legal. (Dkt. 1-2 at pp. 4, 11–12). Maldonado further alleges that Croft and Quinn Emanuel orchestrated the effort to recruit him to sue Buzbee, with financing from Roc Nation, in order to gain leverage over Buzbee in the protracted court battles between Buzbee and Carter. (Dkt. 1-2 at pp. 2–3, 10). Maldonado further pleads that Croft, Spiro, and Roc Nation have worked together on cases for years and that Quinn Emanuel represented Carter when he sued Buzbee in California and when Jane Doe sued Carter in New York. (Dkt. 1-2 at pp. 6–8, 11–12). Spiro was Carter's defense counsel in the New York case and attacked Buzbee personally so aggressively that the district court called his tactics "inappropriate, a waste of judicial resources, and . . . unlikely to benefit his client." *See* Southern District of New York case number 1:24-CV-7975 at docket entry 53, page 4 (record citations omitted). Maldonado's allegations, if true, are sufficient to establish that Croft and MJ Legal, at least, could be held liable under Texas's civil barratry statute. *See* Tex. Gov't Code § 82.0651(c); Tex. Penal Code § 38.12(a). Moreover, Maldonado's allegations, if true, are sufficient to constitute at least circumstantial evidence that Quinn Emanuel helped plan, assist, or encourage Croft's alleged improper solicitation of Maldonado.

Considering the liberal construction that the Court must give Texas's civil barratry statute and the expansive view of civil conspiracy liability countenanced by Texas courts, the Court cannot say that Croft and MJ Legal have met their heavy burden of showing that there is no reasonable basis for the Court to predict that Maldonado might be able to recover

against Quinn Emanuel under Texas law. Accordingly, the Court will grant Maldonado's motion to remand.

<h2 style="text-align:center">CONCLUSION</h2>

Plaintiff Jose Maldonado's motion to remand (Dkt. 17) is **GRANTED**. This case is **REMANDED** to the 190th Judicial District Court of Harris County, Texas, where it was assigned case number 2025-00577.

The Clerk is directed to provide a copy of this order to the parties. The Clerk is further directed to send a certified copy of this order via certified mail, return receipt requested, to the District Clerk of Harris County, Texas and the Clerk of the 190th Judicial District Court of Harris County, Texas.

Any pending motions are **DENIED as moot**. This civil docket is **CLOSED**.

 SIGNED at Houston, Texas on September 17, 2025.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE